```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

IAN PHILLIPS                    :
                                :
     v.                         :    Civ. NO. 3:05cv1959(AHN)
                                :
MERRILL LYNCH, PIERCE,          :
 FENNER and SMITH, INC.         :
                                :
```

OMNIBUS RULING ON PENDING MOTIONS

This consolidated case involves two separate actions: (1) Ian Phillips's ("Phillips") claims against his former broker, Merrill Lynch, Pierce, Fenner, & Smith, Inc. ("Merrill Lynch"), for breach of contract and professional negligence;[1] and (2) Merrill Lynch's petition to confirm an arbitration award it claims to have won against Phillips. The two actions are based on the same underlying set of facts -- Phillips alleges that Merrill Lynch failed to employ proper hedging strategies in 1999 and 2000 to protect his investment portfolio, causing him to lose more than $6 million. Before bringing this action in federal court, Phillips submitted a claim for arbitration to the National Association of Securities Dealers ("the NASD"), pursuant to the agreement he signed when he opened his brokerage account with

---

[1] Phillips asserts a third claim, respondeat superior, which is more accurately described as a theory of liability for his professional negligence claim rather than an independent cause of action. See Matthiessen v. Vanech, 266 Conn. 822, 839 (2003)("[U]nder the common-law principle of respondeat superior, an employer is vicariously liable for compensatory damages arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment."(emphasis omitted)).

Merrill Lynch.  The arbitration panel the NASD selected ("the Panel") dismissed Phillips's claims on August 18, 2005 for reasons that the parties now dispute.  Thereafter Phillips and Merrill Lynch filed their respective suits in this court, which have been consolidated in this action.

Now pending before the court are three separate motions by Merrill Lynch: (1) a petition to confirm the arbitration award, (2) a motion to dismiss Phillips's complaint for breach of contract and professional negligence, and (3) a motion for costs for defending a voluntarily dismissed action under Fed. R. Civ. P. 41(d).  For the following reasons, the court concludes that the Panel's decision is ambiguous, and thus REMANDS the decision to the NASD Panel for clarification of its ruling, DENIES Merrill Lynch's petition to confirm the arbitration award [doc # 1] and its motion to dismiss [doc # 30] without prejudice to refiling both motions after the Panel has clarified its ruling.  Merrill Lynch's motion for costs is DENIED [doc # 29].

FACTS AND PROCEDURAL BACKGROUND

   A.  <u>Facts</u>

Phillips alleges the following facts.  Phillips was the founder and 51 percent shareholder of The Magellan Group, Inc. ("Magellan").  In 1999, he and his business partner entered into a merger agreement with Cybershop International and MG Acquisition Corporation, pursuant to which Phillips sold his

entire interest in Magellan to Cybershop in exchange for more than $2.5 million cash and Cybershop stock.  The majority of the Cybershop stock Phillips received ("the Cybershop Stock") was restricted because it was not registered under the Securities Act of 1933.  These unregistered shares were subject to volume restrictions and a one-year holding period.

Phillips had no prior experience in dealing with unregistered shares and had not maintained an investment portfolio.  Thus, prior to the closing of the merger agreement, he determined that he needed the services of a professional investment advisor to manage the proceeds from the sale of his Magellan interest.  In May 1999, approximately two months prior to the closing of the merger agreement, Phillips met with Merrill Lynch representative Sanford Perlin ("Perlin"), who worked out of Merrill Lynch's Sixth Avenue office in New York City.  Phillips informed Perlin that the cash and Cybershop Stock that Phillips would receive from the sale of his business were his retirement fund, and that he was concerned about the restrictions on the Cybershop Stock.  He told Perlin that his financial objective was to diversify his holdings as much as possible in conservative investments.  Phillips also told Perlin that his investment experience was limited and that he would rely on Merrill Lynch's recommendations to both service and manage his investment portfolio.  Perlin assured Phillips that he had the experience

3

and knowledge to manage Phillips's assets in a manner consistent with his investment objectives.

Based on Perlin's representations, Phillips opened a cash management account ("CMA") with Merrill Lynch on May 25, 1999. The CMA Agreement that Phillips signed provides that it governs all aspects of the CMA service provided by Merrill Lynch. Phillips contends that pursuant to the terms and conditions of the CMA, Merrill Lynch had a contractual obligation to Phillips to recommend investments in accordance with his clearly and explicitly stated objectives, to perform due diligence with respect to its investment recommendations, and to represent and disclose the risks associated with its recommendations.

On June 4, 1999, Phillips transferred to his CMA account $2.7 million, the entire cash proceeds from the Merger Agreement. Three days later, Phillips delivered his 510,000 shares of Cybershop stock to Merrill Lynch in the form of original stock certificates.  These shares were worth approximately $5 million at that time.

When Phillips delivered his Cybershop Stock, he specifically inquired of Perlin if there was anything Phillips could do to protect the unregistered shares in the event the Cybershop stock price declined.  Perlin told Phillips that the Cybershop Stock could not be hedged or otherwise protected.  Phillips contends that in fact there were numerous hedging strategies available to

4

diversify the unregistered shares -- e.g., prepaid variable forwards, collars, and private sales -- but Perlin did not inform him of these options. Thus, Phillips and Perlin did not develop a hedging strategy for the Cybershop Stock.

On June 29, 1999, Phillips invested $2 million in Olympus, LLP, a limited partnership recommended by Perlin and Merrill Lynch. Over the next several months, Perlin boasted to Phillips about how well Olympus was doing. In November and December 1999, Perlin telephoned Phillips to advise him that "things were going great" with the Olympus investment. In February 2000, Phillips inquired of Perlin as to why he had not yet received a statement reflecting Olympus's performance for the previous year. Perlin assured Phillips that he would have a "draft" shortly and thereafter gave him a document titled "Olympus Domestic Return Date Since 6/30/99" that showed a cumulative return of 22 percent on Phillips's investment since June 1999. However, in March 2000, Olympus's accountant provided Phillips a K-1 form that indicated that Phillips's investment had incurred losses. Perlin explained the discrepancy between his bullish comments and the K-1 form as the result of an accounting error in the latter. Phillips continued to telephone Perlin regarding the discrepancy. Phillips, believing that his Olympus investment was prospering, invested $500,000 in John Henry & Company, Inc., in March 2000. Two months later, Perlin informed Phillips that he had left

5

Merrill Lynch and had begun working for Round Hill Securities, Inc. ("Round Hill").

Phillips's portfolio declined steeply in value over the next year and a half. In August 2001, Phillips liquidated 90 percent of his holdings in Olympus at a loss of $800,000. His Cybershop Stock, originally valued in excess of $5 million, became "virtually worthless." Phillips ultimately sustained more than $6 million in losses during the time Merrill Lynch managed his portfolio.

### B.  The NASD Arbitration

In January 2005, Phillips filed a Statement of Claim with the NASD against Merrill Lynch and Round Hill Securities, asserting violations of federal securities laws, the Connecticut Uniform Securities Act, and state-law tort claims for breach of fiduciary duty, contract, fraud, and negligence.[2] In its answer, Merrill Lynch denied all the allegations and asserted a statute of limitations defense. On April 26, 2005, the NASD appointed a three-arbitrator panel, which sat in Hartford, Connecticut.

On May 18, 2005, Merrill Lynch filed a motion to dismiss the arbitration claim, arguing that Phillips's claims were time-barred under Connecticut law. Phillips filed a response, and on August 5, 2005, the Panel conducted a telephonic hearing on the motion. After hearing arguments from counsel, the Panel denied

---

[2] Phillips settled his claims against Round Hill Securities.

Case 3:05-cv-01959-AHN   Document 49   Filed 07/26/06   Page 7 of 16

the motion to dismiss. Two weeks later, however, the Panel gave notice that it had reconsidered its denial of the motion to dismiss and issued the following decision:

> The Panel has reviewed the NASD Code of Arbitration Procedure, and within that Code, to [sic] the Uniform Code of Arbitration Rule 10304,[3] as it relates to the Motion to Dismiss Untimely Allegations by attorneys representing Merrill Lynch, Pierce, Fenner & Smith, Incorporated.
>
> On the basis of that further consideration, the panel hereby grants Merrill Lynch's Motion to Dismiss Untimely Allegations.

C.  <u>Federal Court Litigation</u>

On October 25, 2005, Phillips filed suit against Merrill Lynch in the United States District Court for the District of Delaware, alleging breach of contract and professional negligence. Merrill Lynch filed a motion to dismiss Phillips's complaint on the grounds that, under Delaware's borrowing statutes, the claims were time-barred. It also moved to transfer venue.

On December 22, 2005, Merrill Lynch filed the present action in this court, seeking confirmation of the NASD Panel's arbitration decision. After Merrill Lynch filed its petition to confirm the arbitration award, Phillips voluntarily dismissed his action in the District of Delaware and filed nearly identical

---

[3] NASD Code of Arbitration Procedure § 10304 provides that a claim must be brought within six years to be eligible for arbitration with the NASD.

claims in the District of Connecticut.  The two cases have been consolidated.

## DISCUSSION

I. <u>Petition to Confirm the Arbitration Award</u>

Pursuant to the Arbitration Act, if "the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," then a party may petition a federal court for confirmation of the award, i.e., entry of judgment for the winning party.  <u>See</u> 9 U.S.C. § 9. An award is final if it "resolves all issues submitted to arbitration, and determines each issue fully so that no further litigation is necessary to finalize the obligations of the parties."  <u>See</u> <u>Rocket Jewelry Box v. Noble Gift Packaging</u>, 157 F.3d 174, 177 (2d Cir. 1998).

Merrill Lynch contends that this court should confirm the Panel's August 18, 2005 decision because it constitutes a "final award" as defined by the Arbitration Act.  <u>See</u> 9 U.S.C. § 9.  In opposition, Phillips argues that the Panel's decision could not have been a final award because the Panel never conducted a live hearing and a majority of the arbitrators did not sign the decision.  <u>See</u> NASD Code of Arbitration Procedure § 10330(a)(2006)("All awards shall be in writing and signed by a majority of the arbitrators. . ."). The court agrees with Phillips, although for a different reason -- the Panel's August 18, 2005

8

decision is too ambiguous for the court to determine what Merrill Lynch now petitions it to confirm.

Although judicial review of an arbitration award is very narrowly limited, "a court should not attempt to enforce an award that is ambiguous or indefinite." See Americas Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985). The Panel's August 18, 2005 decision presents such a case, because it is unclear whether the Panel dismissed Phillips's claims because they are ineligible for arbitration under NASD Code of Arbitration Procedure § 10304 ("Rule 10304") or because the applicable Connecticut statutes of limitations had run.  This omission is significant not because the Panel has failed to articulate its reasoning.  See Alexander v. Gardener-Denver Co., 415 U.S. 36, 58 (1974)("[A]rbitrators have no obligation to the court to give their reasons for an award.").  Rather, the decision is fatally ambiguous because the Panel's failure to specify the grounds for the dismissal of Phillips's claims leaves unresolved the question of whether he may have residual rights to pursue his claims in this court.

The confusion concerning the decision stems from the Panel's reference to Rule 10304, which establishes a six-year time limit for claims to be brought before an NASD Panel.  Rule 10304 dictates whether, as a threshold matter, a claim is eligible for NASD arbitration.  See Howsam v. Dean Witter Reynolds, 537 U.S.

9

79, 85 (2002).  If a panel determines that a claim has been brought within the six-year time limit, it then applies substantive law to consider whether the applicable state or federal statutes of limitations have run.

This Panel stated in its August 18, 2005 decision that it had "reviewed" Rule 10304 "as it relates to" Merrill Lynch's motion to dismiss, and "[o]n the basis of that further consideration, the panel hereby grants Merrill Lynch's Motion to Dismiss."  Phillips contends that the Panel, in explaining that it had "reviewed" Rule 10304, was in fact inelegantly stating that it dismissed his claims <u>pursuant</u> to the Rule because they were ineligible for arbitration, and thus Phillips may be able to pursue these claims in federal court.  Merrill Lynch, however, points out that it moved for dismissal before the Panel pursuant to the applicable Connecticut statutes of limitations, not on the basis of the claims' eligibility for arbitration under Rule 10304.  Merrill Lynch argues that it expressly conceded that Phillips's claims were eligible for arbitration under Rule 10304 because they had been brought within six years of their accrual, and thus the Panel could have no colorable justification for dismissing Phillips's claims pursuant to the NASD eligibility requirement.  <u>See</u> <u>Colonial Penn Ins. Co. v. Omaha Indem. Co.</u>, 943 F.2d 327, 334 (3d Cir. 1991)("[A]n ambiguity in the award for which the court may remand to the arbitrators may be shown not

only from the face of the award but from an extraneous but objectively ascertainable fact.").

If the Panel dismissed Phillips claims because they were ineligible for arbitration, a second ambiguity clouds the Panel's decision. The parties appear to assume that if the Panel dismissed Phillips's claims pursuant to Rule 10304, then the current paragraph (b) of that rule permits him to pursue those claims in federal court.[4] However, the NASD only recently added paragraph (b) to its Code of Arbitration Procedure, see 69 Fed. Reg. 69,971 (Dec. 1, 2004)(Securities and Exchange Commission approval of amendment), and the amendment only applies to claims filed with the NASD on or after May 1, 2005. See NASD's January 2005 Notice to Members, at 3. Phillips filed his Statement of Claim with the NASD in January 2005, so paragraph (b) would not appear to apply to his claims before the Panel.

This does not necessarily mean that Phillips may not pursue his claims in this court. The NASD Notice explaining the amendment describes it as a "clarification," and Phillips may have already had the residual right to refile his claims in

---

[4] Paragraph (b) provides that:
   By requesting dismissal of a claim under this Rule, the requesting party agrees that if the panel dismisses a claim under the Rule, the party that filed the dismissed claim may withdraw any remaining related claims without prejudice and may pursue all of the claims in court.
NASD Code of Arbitration Procedure § 10304(b) (2006).

federal court based on the NASD Code of Arbitration Procedure in effect in January 2005. This question, however, is for the Panel and not this court to resolve. See Howsam, 537 U.S. at 85 ("[T]he applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge."). As the Supreme Court has reasoned, "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it." Id.

These fundamental ambiguities in the Panel's decision, and by implication the uncertainty as to which rights Phillips retains to pursue his claims in federal court, render it unwise for this court to confirm the award at this time. Where, as here, the award is ambiguous, the "award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce."[5]  See Americas Ins. Co., 774 F.2d at 67. Accordingly, the court remands the Panel's decision to the NASD Panel to clarify (1) whether it dismissed Phillips's claims

---

[5] The court has considered as part of the record on this petition the March 24, 2006 letter from NASD Staff Attorney Avi Rosenfeld to Merrill Lynch's counsel, but finds this submission unhelpful in resolving the ambiguity of the Panel's decision. First, the letter represents the opinion of an NASD staff attorney, and not that of the arbitral panel that was convened to resolve this dispute. Second, the letter merely recites the procedural history of the case before the Panel and does not address the central question facing the court -- whether the Panel dismissed Phillips's claims pursuant to the six-year eligibility requirement of Rule 10304 or pursuant to the applicable Connecticut statutes of limitations.

pursuant to the NASD's six-year time limit or pursuant to the applicable Connecticut statutes of limitations; and (2) whether the NASD Code of Arbitration Procedure, as applicable to Phillips's claim, permits him to pursue his claims in this court.[6]  The Panel may make whatever change in the decision it deems necessary to resolve the ambiguity.  See Hyle v. Doctor's Assocs., Inc., 198 F.3d 368, 371 n.1 (2d Cir. 1999).

II.  Rule 41(d) Motion for Costs

Merrill Lynch contends that the court should require Phillips to pay the costs and attorney's fees associated with the defense of his action in the District of Delaware.  It accuses Phillips of forum-shopping and asserts that the work its attorneys undertook to prepare a motion to dismiss and a motion to transfer the Delaware action was wasted.  Phillips maintains that he did not act in bad faith in filing, dismissing, and refiling his action in another court, and therefore the court should, in its discretion, decline to award costs and attorney's fees.  The court agrees with Phillips that his actions do not warrant an award of attorney's fees or costs under Rule 41(d).[7]

---

[6] The court observes that this court's authority to remand to eliminate the ambiguity in the Panel's decision is not barred by the three-month time limit in 9 U.S.C. § 12 for a motion to "vacate, modify, or correct" an award.  See Hyle v. Doctor's Assocs., Inc., 198 F.3d 368, 371 n.1 (2d Cir. 1999).

[7] Phillips also contends that the text of Rule 41(d) allows Merrill Lynch to recover only court costs and not attorney's fees, and that the Supreme Court has ruled that "attorney's fees

13

Fed. R. Civ. P. 41(d) provides that:

> If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Fed. R. Civ. P. 41(d). As the permissive language of the Rule indicates, the court has discretion whether to award costs. See Loubier v. Modern Acoustics, 178 F.R.D. 17, 22 (D. Conn. 1998). Rule 41(d) is intended to serve as a deterrent to forum-shopping and vexatious litigation. See Duffy v. Ford Motor Co., 218 F.3d 623, 633 (6th Cir. 2000); Blauinsel Stiftung v. Sumitomo Corp., 99 Civ. 1108 (BSJ), 2001 U.S. Dist. LEXIS 20746, at *27 (S.D.N.Y. Dec. 14, 2001). Thus, although the Rule does not require a showing of bad faith for the award of costs, the court may consider the plaintiff's motive in dismissing the prior action. See Loubier, 178 F.R.D. at 22.

Merrill Lynch contends that Phillips engaged in forum-shopping by selecting the District of Delaware to file suit -- "a venue with no connection to the dispute other than the fact that Merrill Lynch happens to be incorporated there." This contention

---

generally are not a recoverable cost of litigation absent explicit congressional authorization." See Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994)(internal quotations omitted). Because this court concludes that an award of costs is not warranted, it does not consider whether Rule 41(d) permits the recovery of attorney's fees.

14

misses the point.  In filing his initial action, Phillips had "the option of shopping for a forum with the most favorable law." See Ferens v. John Deere Co., 494 U.S. 516, 527 (1990).  The forum-shopping that Rule 41(d) is intended to guard against occurs when a plaintiff voluntarily dismisses the initial suit and refiles the same action in another court, forcing the defendant to incur further costs, because the plaintiff believes he may capture more favorable law in the second venue than the first.

Merrill Lynch also argues that Phillips's dismissal and refiling of his suit constituted forum-shopping.  Phillips, it surmises, must have realized after he initially filed suit that the district court in Delaware might apply Delaware's shorter statutes of limitations, and thus he voluntarily dismissed the Delaware action to bring his suit in a federal court that would apply Connecticut's statutes of limitations.

The facts, however, suggest Phillips's motives are more innocuous.  After Phillips filed his initial action in the District of Delaware, Merrill Lynch filed its petition to confirm the arbitration award in the District of Connecticut.  According to Phillips, he did not want to litigate in two different fora, so he voluntarily dismissed the action and refiled it in the District of Connecticut.  This explanation accords with the request he made in his opposition to Merrill Lynch's petition to

15

confirm the arbitration award, that this court should transfer Merrill Lynch's action to the District of Delaware, where his initial action was still pending.  Thus, while Merrill Lynch contends that Phillips's actions have resulted in needless waste of resources, the fact he dismissed the Delaware action and refiled suit in this court has permitted the consolidation of the two actions and has furthered the ends of judicial economy.  Under these circumstances, an award of costs under Rule 41(d) is not warranted.

## CONCLUSION

For the foregoing reasons, the NASD Panel's August 18, 2005 decision is REMANDED for clarification and, if necessary, modification in accordance with this ruling.  Merrill Lynch's petition to confirm the arbitration award [doc # 1] and motion to dismiss [doc # 30] are DENIED without prejudice, subject to renewal of both motions after the Panel has clarified its decision.  Merrill Lynch's motion for costs [doc # 29] is DENIED.

SO ORDERED this 25th day of July, 2006, at Bridgeport, Connecticut.

                              _____/s/_____
                              Alan H. Nevas
                              United States District Judge